**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RICHARD MORA,<br><br>Plaintiff,<br><br>v.<br><br>ARIEL HILL, TERRENCE NAPIER, QUANETIA JOHNSON-CHAPMAN, AND JOHN DOES,<br><br>Defendants. | Civil Action No.<br>1:25-cv-05680-VMC |

**ORDER**

Before the Court are the following motions:

- Plaintiff Richard Mora's Motion for Default Judgment as to Ariel Hill and Quanetia Johnson-Chapman[1] (Doc. 19); and

- Plaintiff Mora's Motion to Dismiss Counterclaims (Doc. 34)[2]

---

1 The Court refers to Ms. Hill and Ms. Johnson-Chapman collectively as "Defendants" for the purpose of this Order only.

2 Defendants collectively filed three Motions for Emergency Hearings (Docs. 21, 24, 31) which are denied as moot.

## Background[3]

Mr. Mora met Ms. Hill in February of 2025 while she was working at The Cheetah Lounge, located here in Atlanta, GA. (Doc. 1 ¶ 9). Ms. Hill is a dancer working at the Cheetah Lounge, and Mr. Mora believes, additionally performs services as an escort, prostitute, porn star, online influencer, model, singer, stylist, among other engagements for money. (*Id.* ¶ 10). The two entered a relationship characterized by Ms. Hill's aggressive flirting with Mr. Mora and dangling but never delivering sex. (*Id.* ¶¶ 11–14). Ms. Hill convinced Mr. Mora that she was genuinely interested in pursuing a serious relationship to include marriage, despite knowing Mr. Mora was married. (*Id.* ¶ 14).

Ms. Hill promised to end her career as a dancer so she could be a suitable companion for Mr. Mora. (*Id.* ¶ 14). But, Ms. Hill explained, she made a lot of money as a dancer, and she would need for him to replace that income. (*Id.*). According to Ms. Hill, she needed hundreds of thousands of dollars to replace her income. (*Id.*). Mr. Mora paid. (*Id.*).

Ms. Hill convinced Mr. Mora to buy her a car, clothes, and jewelry. (*Id.* ¶ 16). She convinced him to pay for expensive travel, including lavish

[3] The Court draws the following background from the well-pleaded allegations of the Complaint, which are deemed admitted by Defendants' default. Quotation marks are omitted from Complaint excerpts to improve readability.

accommodations. (*Id.*). Ultimately, Ms. Hill convinced Mr. Mora to spend more than a million dollars to and for her benefit. (*Id.* ¶ 17).

To get money from Mr. Mora, Ms. Hill made the following misrepresentations, among others:

> 1) Ms. Hill wanted to be in a serious relationship with Plaintiff;
>
> 2) Ms. Hill earned hundreds of thousands of dollars per year as a dancer;
>
> 3) Ms. Hill would stop dancing if Mr. Mora would replace her income;
>
> 4) Ms. Hill was thankful and grateful for Mr. Mora and really cared for him.

(*Id.* ¶ 18). Mr. Mora believed and relied on these misrepresentations. (*Id.*). Mr. Mora thought it was love. (*Id.*). Meanwhile, Ms. Hill continued to increase the amounts of money she "needed." (*Id.*).

As Mr. Mora began to realize what was happening, he slowed the flow of money. (*Id.* ¶ 19). Ms. Hill quickly pivoted to threats. (*Id.*). Ms. Hill threatened to break up with Mr. Mora and to tell his wife if Mr. Mora did not pay her. (*Id.*). Ms. Hill threatened to post about Mr. Mora on social media. (*Id.*).

Ms. Hill has since filed pro se lawsuits against Mr. Mora and even against a business that formerly employed him and against another company where he is a member of the Board of Directors. (*Id.* ¶ 20). Additionally, Ms. Hill has posted about Mr. Mora on social media. (*Id.* ¶ 21). The posts include a YouTube video and

other postings on various social media platforms disparaging Mr. Mora's character. (*Id.*). Ms. Hill even went so far as to make social media accounts impersonating Mr. Mora to damage his reputation. (*Id.* ¶ 22).

Ms. Hill has stalked Mr. Mora including coming to his home without permission and as a trespasser. (*Id.* ¶ 23). Ms. Hill tacked lawsuit papers to Mr. Mora's front door and then ordered pizzas to be delivered to his home. (*Id.*). She has sent threatening text messages to Mr. Mora, including an image of an hourglass. (*Id.*).

Ms. Hill worked with others to maximize the money Mr. Mora paid. (*Id.* ¶ 25). For example, in addition to seeking money, property, and other things of value for herself, Ms. Hill sought money from Plaintiff allegedly to give to her friend, Quanetia "Tia" Johnson-Chapman (*Id.*). Ms. Johnson is a model and a friend of Hill's. (*Id.*). Mr. Mora at the direction of Ms. Hill, provided money to Ms. Johnson for clothing and for a home, among other purchases. (*Id.* ¶ 26).

Mr. Mora believes that Terrence Napier is also a co-conspirator and that Ms. Hill likely works for and at the direction of Mr. Napier. (*Id.* ¶ 27). Ms. Hill and Mr. Napier apparently owned and/or operated a "spa" together on Cheshire Bridge Rd in or around 2018 which Mr. Mora alleges was operated for the purposes of prostitution and/or other illegal services. (*Id.* ¶ 28).

**Legal Standard**

If a defendant fails to plead or otherwise defend a lawsuit within the time required by Federal Rule of Civil Procedure 12(a)(1)(A), upon motion, the clerk must enter default against the defendant pursuant to Federal Rule of Civil Procedure 55(a). A default constitutes admission of all well-pleaded factual allegations contained in the complaint, but is not considered an admission of facts that are not well-pleaded or conclusions of law. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). "Before a default can be entered, the court must have subject-matter jurisdiction and jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (4th ed. 2008) (citations omitted).

Once a default has been entered, the Court has the "discretion in determining whether the judgment should be entered." *Patray v. Nw. Publ'g, Inc.*, 931 F. Supp 865, 868 (S.D. Ga. 1996) (internal footnote and citation omitted); Fed. R. Civ. P. 55(b); *see also Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985) ("The entry of a default judgment is committed to the discretion of the district court.").

The Eleventh Circuit has made clear that entry of judgment by default is not granted as a matter of right and is judicially disfavored because there is a "strong

policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015) (citation omitted); *see also Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316–17 (11th Cir. 2002) ("Entry of judgment by default is a drastic remedy which should be used only in extreme situations, . . . we must respect the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his day in court.").

Entry of default judgment is only warranted when there is "a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975). Although *Nishimatsu* did not elaborate as to what constitutes "a sufficient basis" for the judgment, courts have subsequently interpreted the standard as being akin to that necessary to survive a motion to dismiss for failure to state a claim. *See Chudasama v. Mazda Motor Corp*., 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *See Wooten v. McDonald Transit Assocs., Inc.*, 775 F.3d 689, 695 (5th Cir. 2015) (stating in the context of a motion for default judgment, "whether a factual allegation is well-pleaded arguably follows the familiar analysis used to evaluate motions to dismiss under Rule 12(b)(6)").

When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *Surtain*, 789 F.3d at 1245 (footnote omitted). "The court must therefore examine the sufficiency of plaintiff's allegations to determine whether plaintiff is entitled to an entry of judgment by default." *Fidelity & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988). The Supreme Court has explained that the pleading standard of Rule 8 of the Federal Rules of Civil Procedure "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S.at 678 (citations and quotations omitted).

"This analysis is equally applicable to a motion for default judgment." *Edenfield v. Crib 4 Life, Inc.*, No. 6:13-CV-319-Orl-36KRS, 2014 WL 1345389, at *2 (M.D. Fla. Apr. 4, 2014) (adopting Report and Recommendation) (citing *De Lotta v.*

*Dezenzo's Italian Rest., Inc.*, No. 6:08-CV-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009)).

## Discussion

Plaintiff seeks default judgment on six counts: (i) the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, with predicate offenses of wire fraud, money laundering, and extortion,[4] (ii) civil conspiracy, (iii) fraud, (iv) theft by taking, (v) unjust enrichment, and (vi) defamation.

### I. Federal RICO

"To state a claim under RICO a plaintiff must allege each of the following four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Sedima S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985)). Additionally, in a civil case, a plaintiff must show "(5) injury to business or

---

[4] To the extent that these claims are pleaded as independent causes of action, instead of predicate offenses, criminal statutes rarely create private causes of action, and none of those alleged to have been violated here have been found to create such a right. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone . . . And we have not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions"); *Chen ex rel. V.D. v. Lester*, 364 F. App'x 531, 536 (11th Cir. 2010) ("Criminal statutes generally do not provide a private right of action.").

property (6) that was by reason of the substantive RICO violation." *MasTec Renewables P.R. LLC v. Mammoth Energy Servs., Inc.*, 494 F. Supp. 3d 1233, 1239 (S.D. Fla. 2020) (quoting *Corcel Corp., Inc. v. Ferguson Enters., Inc.*, 551 F. App'x 571, 575 (11th Cir. 2014)).

"RICO defines racketeering activity as any act indictable" under a list of criminal statutes. *Durham*, 847 F.2d at 1511 (citing 18 U.S.C. § 1961(1)). "To establish a pattern of racketeering activity there must be at least two predicate acts of racketeering activity." *Id.* (citing 18 U.S.C. § 1961(5)). "Although two predicate acts are a prerequisite to establishing a pattern of racketeering activity, they are not by themselves sufficient." *Id.* (citing *Sedima*, 473 U.S. at 496 n. 14). Interpreting the *Sedima* language, the Eleventh Circuit has stated that "to establish a pattern there must be a showing of more than one racketeering activity and the threat of continuing activity." *Id.* (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir. 1986), *abrogated in part on other grounds*, *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993)).

However, "[a]cts that are part of the same scheme or transaction can qualify as distinct predicate acts." *Bank of Am. Nat'l Tr. & Sav. Ass'n,* 782 F.2d at 971. "The standard which has been applied in this Circuit is whether each act constitutes 'a separate violation of the [state or federal] statute' governing the conduct in question . . . . If distinct statutory violations are found, the predicate acts will be

considered to be distinct irrespective of the circumstances under which they arose." *Id.* (citing *United States v. Watchmaker*, 761 F.2d 1459, 1475 (11th Cir. 1985)). "[M]ost courts have rejected the claim that predicate acts which are proximate in time do not demonstrate the 'continuity' necessary for proof of a RICO offense." *Watchmaker*, 761 F.2d at 1475 (citing *United States v. Parness,* 503 F.2d 430 (2d Cir. 1974), *cert. denied,* 419 U.S. 1105 (1975)).

Mr. Mora alleges that Defendants engaged in acts indictable under two statutes in Title 18 enumerated in 18 U.S.C. § 1961(1): Section 1343 (Wire Fraud) and Section 1956 (Money Laundering). Mr. Mora also alleges that Defendants violated Section 873 (Extortion) and Section 875(d) (Interstate Communications). The Court addresses each of these in turn.

**A. Wire Fraud (18 U.S.C. § 1343)**

18 U.S.C. § 1343 criminalizes wire fraud and states in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. Where a RICO claim relies on a wire fraud predicate act, the relevant allegations "must comply not only with the plausibility criteria

articulated in *Twombly* and *Iqbal* but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard." *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1291 (11th Cir. 2010) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") (alteration deleted). "[P]ursuant to Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" *Id.* (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)).

The Complaint alleges "upon information and belief, Defendants – notably Hill – committed multiple acts of wire fraud by transmitting, via wire in interstate commerce, false statements and telephonic communications which induced Plaintiff to provide significant sums of money, property, and other things of value" which "along with other acts of wire fraud, were made in furtherance of Defendants' fraudulent conspiracy and/or scheme." (Doc. 1 ¶¶ 40–41). These allegations, and other allegations in the Complaint, do not meet the requirements of particularity. Consequently, the Court finds that Mr. Mora has not adequately alleged wire fraud.

### B. Money Laundering (18 U.S.C. § 1956)

Mr. Mora alleges "Defendants have knowingly solicited money and property with the intent to promote the carrying on of unlawful activity and knowing that the transaction itself, is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity," in violation of 18 U.S.C. § 1956 (Doc. 1 ¶ 44), a predicate act under 18 U.S.C. § 1961(1). However, section 1956 (sometimes called promotional money laundering) does not fit here.

> To prove a defendant committed money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), the Government must show that the defendant "engaged in financial transactions with the knowing use of the proceeds of illegal activities and with the intent to promote the carrying on of unlawful activity." *United States v. Hudspeth*, 525 F.3d 667, 679 (8th Cir. 2008) (internal quotations omitted); see also *United States v. Warshak*, 631 F.3d 266, 317 (6th Cir. 2010). More precisely, the Government must prove that the person (1) conducted a financial transaction (such as purchasing property) with the proceeds of "specified unlawful activity" (2) with the knowledge that the proceeds came from "some form of unlawful activity" and (3) with the intent "to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i); see 18 U.S.C. § 1956(c)(4)(A)(iii); see also 18 U.S.C. § 1956(c)(3) (defining "transaction" to include a "purchase").

*United States v. 275 Milton Rahn Rd. Rincon, Ga. 31326*, No. 4:18-CV-299, 2022 WL 969621, at *6 (S.D. Ga. Mar. 30, 2022). The Complaint does not explain how the money Mr. Mora paid promoted further specified unlawful activity.[5]

**C. Other Alleged Predicate Acts**

In Count V of the Complaint, Mr. Mora alleges that Defendants violated 18 U.S.C. § 873 (misdemeanor blackmail), and 18 U.S.C. § 875(d) (extortion by interstate communications). However, neither of these statutes are RICO predicate acts under 18 U.S.C. § 1961(1).

**D. Threat of Continuing Activity**

Because Mr. Mora has not adequately pleaded two predicate acts, the Court could stop here. But the Court also finds that he has not established "the threat of continuing activity." *Durham*, 847 F.2d at 1511 (quotations omitted).

"[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sedima*, 473 U.S. at 497 n.14 (quoting 18 U.S.C. § 3575(e)); *accord Touche Ross & Co.*, 782 F.2d at 971 ("In this case the banks have alleged nine

---

[5] Section 1956 also prohibits transactions designed "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity," but the Complaint makes no allegations in this respect. 18 U.S.C. § 1956 (a)(1)(B)(i).

separate acts of wire and mail fraud, involving the same parties over a period of three years, for the purpose of inducing the banks to extend credit to International Horizons. Under *Sedima* the complaint satisfies the pattern requirement.").

"The 'continuing nature' of the criminal conduct, set forth in the third prong, can be established in one of two ways: relying on either a closed- or open-ended theory of continuity." *MasTec Renewables*, 494 F. Supp. 3d at 1239 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). "The former theory refers to 'a closed period of repeated conduct,' while the latter implicates 'past conduct that by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242). "A RICO action, however, will often 'be brought before continuity can be established in this way.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242). "'In such cases,' then, a plaintiff must rely on an open-ended theory and establishing liability on that basis 'depends on whether the threat of continuity is demonstrated.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242). "The continuity aspect of a RICO claim is vitally important because 'RICO was designed to create liability for longstanding racketeering activity, and not isolated schemes.'" *Id.* (quoting *Emess Cap., LLC v. Rothstein*, No. 10-60882-CIV, 2011 WL

13214302, at *6 (S.D. Fla. Mar. 9, 2011), *report and recommendation adopted,* 2011 WL 13214308 (S.D. Fla. Dec. 21, 2011)).

Mr. Mora cannot "show closed-ended continuity because there is only one victim . . . , and 'only a single scheme with a discrete goal' connecting the predicate acts . . . but "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1267 (11th Cir. 2004)).

As to open-ended continuity, Mr. Mora conclusorily alleges that "Napier remains an associate and co-conspirator of Hill's and the two continue to engage in various criminal enterprises which violate both state and federal laws," and that "[o]n information and belief, the Defendants in this action are working in concert as part of a conspiracy to target and solicit wealthy individuals like Plaintiff, and then threaten, coerce, and/or otherwise extort them into paying large sums of money." (Doc. 1 ¶ 29–31). This is insufficient to plausibly allege the existence of an open-ended continuing enterprise.

Even if it were enough, the Eleventh Circuit has declined to find open-ended continuity where "[t]here is no threat that [the schemer's] alleged pattern of racketeering activity will continue into the future because their goal has been

realized . . . ." *Vinecombe*, 625 F. App'x at 976–77; *see also Vicom, Inc. v. Harbridge Merch. Servs.*, Inc., 20 F.3d 771, 782 (7th Cir.1994) ("In assessing whether a threat of continued racketeering activity exists, we have made clear that schemes which have a clear and terminable goal have a natural ending point. Such schemes therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity."). Accordingly, the Court finds that Mr. Mora has failed to meet his burden of establishing a federal RICO claim.

**II. Civil Conspiracy**

Under Georgia law[6] "[a] conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002) (quoting *First Fed. Sav. Bank v. Hart,* 363 S.E.2d 832 (Ga. Ct. App. 1987)). "To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Id.* (citing *Savannah Col. of Art & Design, Inc. v. Sch. of Visual Arts,* 464 S.E.2d 895 (Ga. Ct. App. 1995)). "Absent the underlying tort, there can be no liability for civil conspiracy." *Id.* (quoting *O'Neal v. Home Town Bank,* 514 S.E.2d 669 (Ga. Ct. App. 1999)). For the reasons the Court gives in the following sections, Mr. Mora has not stated a claim

[6] Mr. Mora appears to argue Georgia law applies to his state law claims. (Doc. 19 at 12). The Court assumes Georgia law applies for the purpose of the motion.

for a tort under Georgia law and so his civil conspiracy claim fails. *See id.* (citing *Ass'n Servs. v. Smith,* 549 S.E.2d 454 (Ga. Ct. App. 2001)).

**III. Fraud**

"To state a claim for fraud under Georgia law, a plaintiff must allege: '(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages.'" *WFG Nat'l Title Ins. Co. v. 3225 Cedar St., LLC (GA)*, No. 1:22-CV-04263-SEG, 2023 WL 10476014, at *5 (N.D. Ga. Sept. 8, 2023) (quoting *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1296 (N.D. Ga. 2018)).

As the Court noted in the RICO section, above, allegations of fraud are subject to Rule 9(b)'s heightened pleading standard. "[P]ursuant to Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" *Am. Dental Ass'n*, 605 F.3d at 1291 (quoting *Brooks*, 116 F.3d at 1380–81).

Mr. Mora alleges that "Hill made the following misrepresentations and more:"

> 1) Hill wanted to be in a serious relationship with Plaintiff; 2) Hill earned hundreds of thousands of dollars per year as a dancer; 3) Hill would stop dancing if Plaintiff would replace her income; 4) Hill was thankful

> and grateful for Plaintiff and really cared for him. Plaintiff believed and relied on these misrepresentations. Plaintiff thought it was love.

(Doc. 1 ¶ 18). He also alleges that the misrepresentations were made "for the purposes of inducing Plaintiff to provide her money, property, and other things of value, and that "[i]n detrimental reliance on Hill's representations, Plaintiff was induced to provide money and other property in an amount to be determined, but no less than $1,000,000.00." (*Id.* ¶¶ 62, 66).

While these allegations satisfy the "who,"[7] "what," and "why," they do not satisfy the "when." The Court only knows that the two met in February of 2025 and at some point that year the relationship ended. (Doc. 1 ¶ 9). But the "when" is crucial because it is unclear at what points Mr. Mora paid money. One possibility is that Ms. Hill made all of the statements at once at the beginning of their relationship, before he paid her any money. But if she made the statements and received money over time, the Court would need to separately analyze causation and reliance.

Relatedly, Mr. Mora has not plausibly alleged justifiable reliance. "Fraud cannot be based on misrepresentations that the plaintiff could not justifiably rely upon." *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1364

---

[7] The Court notes that Mr. Mora does not appear to allege any misrepresentations by Defendant Johnson-Chapman.

(N.D. Ga. 2006) (citing *GCA Strategic Inv. Fund, Ltd. v. Joseph Charles & Assocs., Inc.*, 537 S.E.2d 677 (Ga. Ct. App. 2000)). "Thus, 'a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfulfilled predictions or erroneous conjecture as to future events.'" *Id.* (quoting *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003)) "The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made." *Id.* (quoting *Equifax, Inc. v. 1600 Peachtree, L.L.C.,* 601 S.E.2d 519 (Ga. Ct. App. 2004)). "In addition, parties are not justified in relying upon representations that are 'general commendations or mere expressions of opinion, hope, expectation and the like.'" *Id.* (quoting *Anderson v. Atlanta Comm. for the Olympic Games*, 584 S.E.2d 16 (Ga. Ct. App. 2003)).

While Mr. Mora alleges reliance on the above statements, he does not allege it was justifiable and the Court cannot infer justifiable reliance from the allegations of the Complaint. Aside from assertions about her present income, Ms. Hill's alleged representations do not constitute statements of present facts and the Court finds the justifiability of any reliance on Ms. Hill's affection implausible. This claim fails too.

## IV. Theft

Mr. Mora next seeks default judgment on his claim for theft by taking under O.C.G.A. § 16-8-2. Courts have found that this statute does not provide a private right of action. *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1380 (N.D. Ga. 2012). Section § 51-10-6(a) does provide a private right of action to a person "who commits a theft as defined in Article 1 of Chapter 8 of Title 16 involving the owner's personal property."

The Eleventh Circuit has recognized that Georgia's statutory definition of theft by taking is "sufficiently broad to encompass thefts or larcenies perpetrated by deception." *Vassell v. U.S. Att'y Gen.*, 839 F.3d 1352, 1360 (11th Cir. 2016) (quoting *Ray v. State*, 299 S.E. 2d 584, 586 (Ga. Ct. App. 1983)). But where claims for civil theft rely on a theft-by-deception theory, courts in this district have required such claims to be pleaded with particularity. *Bivin-Hunter v. Wyndham Vacation Resorts, Inc.*, No. 1:09-CV-03465-JOF, 2010 WL 11601332, at *10 (N.D. Ga. Sept. 1, 2010). Mr. Mora's claims for theft are not pleaded with particularity for the same reasons the Court gave for his fraud claims above.

## V. Unjust Enrichment

Mr. Mora next argues that "[a]s a result of Defendants' fraudulent behavior, and otherwise, [Mr. Mora] was induced to provide money, property, and other

things of value to Defendants which directly benefitted Defendants," supporting a claim for unjust enrichment.

"Unjust enrichment applies when as a matter of fact there is no legal contract . . . , but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." *Engram v. Engram*, 463 S.E.2d 12, 15 (Ga. 1995) (quoting *Smith v. McClung*, 452 S.E.2d 229, 232 (Ga. Ct. App. 1994)) (alterations accepted, internal quotation omitted).

Generally speaking, gifts cannot be the subject of an unjust enrichment claim—"one who makes a gift or voluntarily pays money which [s]he knows [s]he does not owe confers a benefit [, but she is not] entitled to restitution." *Crook v. Foster*, 775 S.E.2d 286, 289 (Ga. Ct. App. 2015) (quoting *Stoker v. Bellemeade*, LLC, 615 S.E.2d 1, 6–7 (2005), *overruled on other grounds by Bellemeade, LLC v. Stoker*, 631 S.E.2d 693 (Ga. 2006)) (alterations in original).

While Georgia recognizes conditional gifts, "[w]hether a gift is conditional . . . is a question of the donor's intent, to be determined from any express declaration by the donor at the time of the making of the gift or from the circumstances." *Shadder v. Holland*, 828 S.E.2d 418, 420 (Ga. Ct. App. 2019) (quoting 38 Am.Jur.2d, Gifts, § 67). That said, "the mere fact that the donee fails to do what

the donor hopes and expects of the donee does not warrant the revocation of a completed gift." *Id.* (quoting 38 Am.Jur.2d, Gifts, § 67).

Mr. Mora points to no express declaration of a condition placed on the funds transferred at the time they were given. The facts as alleged in this case do not create a plausible inference that a true conditional gift was intended. Perhaps the most common circumstance giving rise to a conditional gift is an engagement ring, where the condition of marriage is readily ascertainable from the circumstances. *In re Stage*, 85 B.R. 880, 881 (Bankr. M.D. Fla. 1988). Here, the facts as alleged only support an inference that Mr. Mora hoped and expected Ms. Hill to end her career as a dancer and enter a relationship with him. This is not enough for an unjust enrichment claim.

**VI. Defamation**

Finally, Mr. Mora claims Ms. Hill has defamed him. In his Complaint, he alleges "Hill has posted about Plaintiff on social media. The posts include a YouTube video and other postings on various social media platforms disparaging Plaintiff's character. The posts include false and derogatory information and are, thus defamatory." (Doc. 1 ¶ 21).

In Georgia, written defamation is libel. O.C.G.A. § 51-5-1. "Georgia law defines libel as the 'false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and

exposing him to public hatred, contempt, or ridicule.'" *Beckman v. Regina Caeli, Inc.*, 752 F. Supp. 3d 1346, 1370 (N.D. Ga. 2024) (quoting O.C.G.A. § 51-5-1(a)). The elements of a libel claim are "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Id.* (quoting *Smith v. DiFrancesco*, 802 S.E.2d 69, 72 (Ga. Ct. App. 2017)).

While special harm or the actionability of the statement irrespective of special harm is the last element, courts generally begin the libel analysis by distinguishing between defamation per se, which is actionable regardless of special harm, and defamation per quod, which is only actionable if special harm is proven. *Beckman*, 752 F. Supp. 3d at 1373.

"Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality." *Zarach v. Atlanta Claims Ass'n*, 500 S.E.2d 1, 5 (Ga. Ct. App. 1998) (quoting *Barber v. Perdue*, 390 S.E.2d 234, 235 (Ga. Ct. App. 1989)). Statements that tend to injure one in his trade or business also are libelous per se. *Id.* (citing *Southern Co. v. Hamburg,* 470 S.E.2d 467 (Ga. Ct. App. 1996)). "To determine whether a statement is defamatory per se, courts look to 'the plain import of the words spoken.'" *Beckman*, 752 F. Supp. 3d at 1373 (quoting *Bellemead, LLC v. Stoker*, 631 S.E.2d 693, 695 (Ga. 2006)). "For a statement to be recognized as defamatory

per se, its words must be 'injurious on their face—without the aid of extrinsic proof.'" *Id.* (quoting *Bellemead*, 631 S.E.2d at 695). "[T]he court may not hunt for a strained construction in order to hold the words used as being defamatory as a matter of law." *Id.* (quoting *Bellemead*, 631 S.E.2d at 695) (internal quotations omitted, alteration in original).

Plaintiff's complaint conclusorily alleges that "Hill made false statements regarding Plaintiff's trade, office, character, and/or profession," (Doc. 1 ¶ 74), but without the statements themselves in the record, the Court cannot conduct the above analysis.

"[I]f the defamatory character of the words [does] not appear on their face but only become defamatory by the aid of extrinsic facts, they are not defamatory per se, but per quod, and are said to require innuendo." *Beckman*, 752 F. Supp. 3d at 1374 (quoting *Zarach*, 500 S.E.2d at 5). "Unlike libel per se, actions alleging libel per quod must set forth and prove 'special damages,' or the action must be dismissed." *Id.* (quoting *Hoffman-Pugh v. Ramsey*, 193 F. Supp. 2d 1295, 1299 (N.D. Ga. 2002), *aff'd*, 312 F.3d 1222 (11th Cir. 2002)). "These special damages must be the loss of money, or of some other material temporal advantage capable of being assessed in monetary value." *Zarach*, 500 S.E.2d at 5. And under Federal Rule of Civil Procedure 9(g)," If an item of special damage is claimed, it must be specifically stated." Mr. Mora just alleges that "[t]he defamatory posts have caused

nominal, actual, and presumed damages," which is not a specific allegation of special damages. (Doc. 1 ¶ 21). Mr. Mora's libel claim fails too.

**Conclusion**

At the hearing on Mr. Mora's motion for a temporary restraining order, the Court provided Mr. Mora notice that his Complaint was deficient in several respects when it denied the motion. Rather than amending his Complaint, Mr. Mora plowed ahead with a default judgment motion. Under these circumstances, the Court does not see a basis for permitting Mr. Mora to amend his Complaint. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248–49 (11th Cir. 2015). Instead, the Court will dismiss this case without prejudice. *See* Fed. R. Civ. P. 41(b) ("**Unless the dismissal order states otherwise** . . . any dismissal not under this rule . . . operates as an adjudication on the merits.") (emphasis added). Because Defendants are in default and couldn't file counterclaims to begin with, the motion to dismiss counterclaims is moot. Thus, Ms. Hill and her co-defendants should not take this ruling as a vindication on their claims against Mr. Mora, because the Court did not address them at all. Instead, the Court advises all parties to take this opportunity to move on and voluntarily cease contact with each other.

It is **ORDERED** that Plaintiff's Motion for Default Judgment as to Ariel Hill and Quanetia Johnson-Chapman (Doc. 19) is **DENIED**. It is

**FURTHER ORDERED** that Plaintiff Mora's Motion to Dismiss Counterclaims (Doc. 34) is **DENIED AS MOOT**. It is

**FURTHER ORDERED** that the Motions for Emergency Hearings (Docs. 21, 24, 31) are **DENIED AS MOOT**. It is

**FURTHER ORDERED** that this civil action is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED** this 31st day of July, 2026.

Victoria Marie Calvert
United States District Judge